IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

_____
                                            )
WILLIAMS JAMES GRIFFIN, et al.,   )
                                            )
    Plaintiffs,                          )
                                            )
vs.                                         )    Case No.:   2:20-cv-00630-AKK
                                            )
Benefytt Technologies, Inc., et al.,        )
                                            )
                                            )
    Defendants.                         )
_____)

# **ORDER**

    William James Griffin and Ashley Lawley filed this class action against Benefytt Technologies, Inc. and Health Plan Intermediaries Holdings, Inc. (collectively the "HII defendants").   Griffin and Lawley accuse the HII defendants of fraudulently selling health plans by misrepresenting them as comprehensive health insurance. Doc. 1 at ¶ 1.   The court has for consideration the HII defendants' motion to transfer venue to the Southern District of Florida under the first-filed rule or alternatively to stay pending the resolution of the case in Florida.   Doc. 27 at 2.   The motion to transfer, which is fully briefed and ripe for review, is due to be granted.

## I.

On May 5, 2020, the plaintiffs filed this lawsuit accusing the HII defendants of conspiring with Simple Health, Assurance IQ, Inc., and Nationwide Health Advisors to sell HII's purportedly noncomprehensive, limited health insurance and discount plan products. Doc. 1. The plaintiffs claim the HII defendants and their distributors are misrepresenting the products as comprehensive, Affordable Care Act ("ACA") compliant health insurance plans. Doc. 1 at ¶¶ 22-28. Allegedly, the HII defendants have violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), by committing mail and wire fraud, *id.* at ¶¶ 118-122, have conspired to commit mail and wire fraud in violation of § 1962(d), *id.* at ¶¶ 123-127, and have violated 18 U.S.C. § 2 by aiding and abetting Assurance, Simple Health, and Nationwide in committing fraud, *id.* at ¶¶ 128-133. The plaintiffs assert these claims on behalf of a class of individuals who have purchased a plan from the HII defendants through Assurance, Simple Health, or Nationwide since May 5, 2016, *id.* at ¶ 104, and a sub-class of individuals who "incurred a medical expense that was not covered because the product was not a comprehensive health insurance plan," *id.* at ¶ 105. The plaintiffs seek monetary damages and injunctive relief. *Id.* at ¶¶ 134-136.

Eleven months before the plaintiffs filed this case, a different set of plaintiffs filed a class action against the HII defendants in the Southern District of Florida. Doc. 27-1; *Belin v. Health Ins. Innovations, Inc.*, CASE NO. 19-cv-61430-SINGHAL/Seltzer (S.D. Fla. filed June 7, 2019). The *Belin* plaintiffs subsequently added the CEO of HII as a defendant. *See* doc. 27-2 at ¶ 23. The *Belin* plaintiffs accuse the HII defendants of working with Simple Health, Nationwide Health, and other distributors, including Assurance IQ, Inc., who the plaintiffs specifically name but do not include as a defendant, to misrepresent their health plans as comprehensive, ACA-complaint health insurance and fraudulently sell the plans to consumers. Doc. 27-2 at ¶¶ 1-5, 24-40. The *Belin* plaintiffs also assert the same RICO claims as the plaintiffs in this case. *See id.* at ¶¶ 261-281. In addition, the *Belin* plaintiffs also plead claims for aiding and abetting breach of fiduciary duty, *see id.* at ¶¶ 282-286; aiding and abetting fraud, *see id.* at ¶¶ 287-293; and unjust enrichment, *see id.* at ¶¶ 294-297. And, like the plaintiffs in this case, the *Belin* plaintiffs also wish to represent a class of individuals who purchased the HII defendants' health "plans through Simple Health or Nationwide within the applicable statute(s) of limitation, and paid a fee and/or a premium." Doc. 27-2 at ¶ 250. They also propose subclasses of individuals who "incurred uncovered medical expenses" and "who incurred a penalty under the ACA's individual mandate

3

provisions." *Id.*  Finally, unlike the plaintiffs in this case, the *Belin* plaintiffs do not seek injunctive relief and instead ask only for monetary damages.  Doc. 27-2 at ¶¶ 272, 276, 281, 286, 293, 297.

## II.

"The first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case."  *Coll. Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013).  The rule eliminates waste of judicial resources, prevents conflicting rulings, and seeks to avoid negatively affecting the authority of sister courts.[1]  This rule "looks to the character of the suits and the parties to the suits, not simply to the similarity of issues without regard to the identity of the parties asserting them and their asserted rights as presented in the initial lawsuit."  *Coll. Licensing Co.*, 713 F.3d at 79.  The presumption favoring the first-filed forum is strong, *see Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005), but courts have "an ample degree of discretion in applying the first filed rule[,]" *see*

---

[1] *See Laskaris v. Fifth Third Bank*, 962 F. Supp. 2d 1297, 1298 (S.D. Fla. 2013); *Marietta Draper & Window Coverings Co., Inc. v. N. River Ins. Co.,* 486 F. Supp. 2d 1366, 1369 (N.D. Ga. 2007); *Halbert v. Credit Suisse AG*, 358 F. Supp. 3d 1283, 1288 (N.D. Ala. 2018); and *Lott v. Advantage Sales & Mktg. LLC,* 2:10-cv-00980, 2011 WL 13229682, at *2 (N.D. Ala. Jan. 26, 2011).

*Savage v. Seterus, Inc.*, Case No. 2:19-CV-14256, 2020 WL 230982, at *2 (S.D. Fla. Jan. 15, 2020) (internal quotations omitted).

The rule requires the court to ascertain whether the two cases are likely to substantially overlap. *DocRX, Inc. v. InforMD, LLC*, Civil Action No. 14-00486-KD-B, 2015 WL 3503170, at *4 (S.D. Ala. June 2, 2015). This entails looking at "(1) the chronology of the actions; (2) the similarity of the parties involved; and (3) the similarity of the issues." *Lott*, 2011 WL 13229682, at *2 (quoting *Goldsby v. Ash*, No. 2:09-cv-975-TFM, 2010 WL 1658703, at *2 (M.D. Ala. Apr. 22, 2010)); *see also Halbert*, 358 F. Supp. 3d at 1288. But "[i]t is important to note that the parties and issues need not be identical . . . ." *Lott*, 2011 WL 13229682, at *2; *see also Ruth v. AT&T Corp.*, CIVIL ACTION NO. 08-AR-0624-S, 2008 WL 11411395, at *2 (N.D. Ala. July 24, 2008). And "[w]here the overlap between two suits is less than complete, the judgment is made case by case, based on factors as the extent of the overlap, the likelihood of conflict, the comparative advantage, and the interest of each forum in resolving the dispute." *Ruth*, 2008 WL 11411395, at *2 (quoting *TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996)). If the court determines the cases are likely to substantially overlap, then the party contesting transfer must show that there are "compelling circumstances" that disfavor transfer. *Manuel*, 430 F.3d at 1135. When the cases are likely to

substantially overlap and no compelling circumstances exist, the second-filed court should transfer the case to the first-filed court for that court to resolve whether both cases should proceed and, if so, how. *DocRX, Inc.*, 2015 WL 3503170, at *3-4; *Ruth*, 2008 WL 11411395, at *2 (citing *Marietta Drapery & Window Coverings*, 486 F. Supp. 2d at 1369); *Laskaris*, 962 F. Supp. 2d at 1299; and *Marietta Draper & Window Coverings,* 486 F. Supp. 2d at 1369.

### A.

The court turns now to parties' respective contentions regarding whether the two cases are likely to substantially overlap. The first part of the analysis is not in dispute—the *Belin* plaintiff*s* filed their lawsuit eleven months before this lawsuit. *See* docs. 1 & 27-1. The issues of contention are the similarity of the parties and issues.

### 1.

In assessing the similarity of the parties, the court notes first that the defendants in the two cases partially overlap. In both cases, the plaintiffs name the HII defendants. Docs. 1 at ¶ 1 & 27-2 at ¶ 23. However, there is one unique defendant (or proposed defendant) in each case. Specifically, in *Belin*, the HII CEO is a defendant, *compare* doc. 1 at ¶¶ 9-10 *with* doc. 27-2 at ¶ 23, and, in the case before this court, the proposed amended complaint adds Assurance as a defendant, *compare*

6

doc. 28-1 at ¶ 15 *with* doc. 27-2 at ¶¶ 21-23.  Despite the presence of these two non-identical defendants, the overlap is still substantial.  *See DocRX, Inc.*, 2015 WL 3503170, at *4.

To begin, although the HII CEO is not a defendant in this case, he is related to the commonly named HII defendants.  As such, his inclusion does not prevent a finding that the defendants in both cases are substantially similar.[2]  And, even if the court permits the plaintiffs here to add Assurance as a defendant, the addition would not dramatically impact the overlap.  To be sure, because Assurance is not a subsidiary or related to the HII defendants, Assurance's presence as a party will result in less overlap with the defendants in *Belin*.  *See Ruth*, 2008 WL 11411395, at *3 and *Xpansion Holdings*, 2016 WL 10520950, at *2.  But still, all the other defendants in the first-filed case are the same or related to the defendants in the case before this court.  *Compare* doc. 1 at ¶¶ 9-10 *with* doc. 27-2 at ¶¶ 21-23.  And because the parties "need not be identical," *Lott*, 2011 WL 13229682, at *2, the addition of Assurance as a defendant here would not negate the overlap of defendants between the two lawsuits.

---

2 *See Ruth*, 2008 WL 11411395 at *3 (holding the uncommon defendants in the second-filed case were similar enough to the commonly named defendant because they were wholly-owned subsidiaries of that defendant).

7

On the plaintiffs' side, there is no overlap between the individual plaintiffs in the two cases. Still, the cases share similarities in the proposed classes. *See* docs. 1 at ¶¶ 7-8, 104-105 & 27-2 at ¶¶ 13-20, 250. More specifically, the proposed class in *Belin* includes individuals who purchased HII's products "through Simple Health or Nationwide within the applicable statute(s) of limitation, and paid a fee and/or a premium[,]" doc. 27-2 at ¶ 250, which, as defined, includes the named plaintiffs in the case before this court. The proposed class in this case includes individuals who purchased a plan from the HII defendants through Simple Health, Nationwide, or Assurance since May 5, 2016, doc. 1 at ¶ 104, which includes some of the named plaintiffs in *Belin*. As defined, the proposed classes overlap for those who purchased HII plans through Simple Health and Nationwide but differ in that the proposed class in this case also includes individuals who purchased HII plans through Assurance. Despite the differences, there is still enough similarities for the court to find the plaintiffs in the two cases are likely to substantially overlap—a finding evident, in part, in the fact that some individuals will receive class action notices from both cases for "the same claims against the same defendant[s] . . . ." *Lott*, 2011 WL 13229682, at *6. And, this reality that the plaintiffs in both cases seek to represent primarily the same proposed classes underscores the potential that "plaintiffs could receive differing judgments for the same defendants' conduct."

*Ruth*, 2008 WL 11411395, at *3.  This similarity in the plaintiffs, as well as in the defendants, favors transfer to the district of the first-filed case.³

**2.**

The court must also examine the similarity between the issues in the two cases. *Lott*, 2011 WL 13229682, at *2.  In both cases, the plaintiffs generally allege that the HII defendants conspired with distributors to misrepresent their health plans as being comprehensive, ACA-compliant health insurance and to trick consumers into buying the plans.  *See* docs. 1 at ¶¶ 22-23; 27-2 at ¶¶ 42-50.  Both sets of plaintiffs claim the HII defendants developed and coordinated "a scheme to market its" health plans and products "as comprehensive health insurance in order to exact inflated prices and convince consumers that they were buying traditional health insurance." Docs. 1 at ¶ 22; 27-2 at ¶¶ 2, 42, 50.  In each case, the plaintiffs allege the HII defendants "recruited and conspired with distributors . . . to market these limited

---

³Both parties cite the undersigned's decision in *Halbert* where the court found that the movant had failed to show the two cases at issue would substantially overlap and denied a motion to stay the second-filed lawsuit.  358 F. Supp. 3d at 1289.  *Halbert* is different from this case, however, because the plaintiffs in the second-filed action were asserting their claims individually and not on behalf of a purported class.  *Id.*  And, even though the first-filed case's proposed class included the individual plaintiffs in *Halbert*, the individual plaintiffs in *Halbert* could always opt out of the first-filed class action.  *Id.*  That fact, and because the defendants sought only a stay instead of a transfer like in this case, led the court to find that "[a]pplying the first-filed rule at this juncture would not avoid duplicative litigation or piecemeal resolution of issues that call for a uniform result."  *Id.* (internal quotes omitted).  In contrast, here, both groups of plaintiffs seek to certify a class involving the same alleged conduct, and the possibility of duplicative litigation and piecemeal results exists as the proposed classes are likely to be substantially similar.

9

benefit non-ACA compliant" health plans and products "as comprehensive health insurance." Docs. 1 at ¶ 23; 27-2 at ¶¶ 42, 50, 53-54.

While many issues in the two cases are similar, there are also differences—namely the type of relief sought and the claims asserted. To start, the relief sought in this case differs in that the plaintiffs are also seeking injunctive relief. *Compare* doc. 1 at ¶¶ 134-136 with doc. 27-2 at ¶¶ 271-272, 276, 281, 286, 293, 297. However, this additional type of relief will not change the character or substance of the case because determining whether to grant an injunction will not overly expand the scope of discovery nor change the character of the case or impact the overlapping nature of the issues.[4]

Second, the *Belin* plaintiffs assert three unique claims that do not overlap with the claims in this case, i.e. that the HII defendants aided and abetted in the breach of fiduciary duty and the fraud and were unjustly enriched. Doc. 27-2 at ¶¶ 282-297. But, this distinction is not dispositive because both sets of plaintiffs assert the same alleged violations of RICO. Docs. 1 at ¶¶ 118-133; 27-2 at ¶¶ 261-281. In that respect, despite the difference in overall claims asserted, the two cases will be

---

[4]When deciding whether to grant an injunction, "the court must consider whether (1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships favors the grant of injunctive relief, and (4) it is in the public interest to grant injunctive relief." 14A *Cyclopedia of Federal Proc.* § 73:8 (3d ed.).

resolved based on the "same operative facts[.]" *See e.g., Xpansion Holdings, LLC*, 2016 WL 10520950, at *3.

To close, although the two cases are not fully identical, they are likely to substantially overlap. All but one (and perhaps two if Assurance is added as a defendant) of the defendants are the same, and while the individual plaintiffs are different, the proposed classes overlap for those who purchased the HII health plans through Nationwide and Simple Health. Finally, despite the additional request for injunctive relief in this case and the additional claims in *Belin*, the issues in the two cases are largely related to the same facts. These similarities are enough to find that the two cases are likely to substantially overlap. Therefore, because both cases assert "most of the [same] allegations" and accuse the defendants of "virtually the same" conduct, it would be a waste of judicial resources for two separate courts to evaluate these facts. *Ruth*, 2008 WL 11411395, at *5. As a result, the court finds the cases are similar in issues and parties and satisfy the likely to substantially overlap inquiry.

## B.

In light of the similarity of issues and parties, transfer is warranted barring any compelling reasons for the court to retain jurisdiction over this case. There are no such compelling circumstances in this case. *Manuel*, 430 F.3d at 1135. The two

cases are generally in similar early stages. Unlike this court, the *Belin* court has already addressed a motion to dismiss, *see* CASE No. 19-cv-61430, doc. 133 (June 7, 2020), the *Belin* parties are in the midst of discovery, *see id.* doc. 134 (June 7, 2020), and the *Belin* plaintiffs moved for class certification recently, *see id.* doc. 168. Here, the court still has a motion to dismiss pending, *see* doc. 18, and formal discovery has yet to commence. However, because discovery is still ongoing in *Belin* and the plaintiffs here will have the opportunity to pursue their claims in that case, there are no compelling circumstances to "warrant an exception to the 'first-to-file' rule." *Cardenas*, 2019 WL 4705843, at *2-3.[5] In short, transferring this case to the Southern District of Florida would aid in conserving judicial resources. *Cardenas*, 2019 WL 4705843, at *2.

---

[5] The *Cardenas* court found compelling circumstances because the first-filed case had completed discovery and the judge in that case had already ruled on one motion for summary judgment, whereas the later filed case had not begun discovery. *Cardenas*, 2019 WL 4705843 at *2-3. The *Cardenas* court also found that the second-filed plaintiffs pleaded claims that were not alleged in the first-filed case, "so, the judges presiding over those cases have not issued any rulings on" those new claims. *Id.* at *2  Here, while the plaintiffs in *Belin* plead claims that are not alleged here, the opposite is not true, and transferring this case to the Southern District of Florida will not introduce any new claims. Further, distinct from *Cardenas*, the HII defendants and most of the third-party distributors are located in Florida where the *Belin* case is pending and where most of the alleged conduct likely occurred. *See id.* (noting the conduct and some of the parties were located in the state of the first-filed case); *see also* docs. 1 at ¶¶ 9-10, 13-14 & 27.2 at ¶ 11.

## III.

Because this case and *Belin* are likely to be substantially similar and the plaintiffs have not advanced any compelling circumstances justifying retaining jurisdiction in the Northern District of Alabama, the defendants' motion to transfer, doc. 27, is **GRANTED**. The Clerk is accordingly **ORDERED** to **TRANSFER** this case to Judge Raag Singhal in the Southern District of Florida. Because this case will be transferred, the court will not address the defendants' motion to dismiss or motion for extension of time and the plaintiffs' motion to amend the complaint.

**DONE** the 9th day of November, 2020.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE